**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ROULA BAROUDI,

       Plaintiff,

v.                                   Case No: 8:14-cv-1099-T-30TBM

ERIC K. SHINSEKI,

       Defendant.

_____

## ORDER

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Dkt. 26), Plaintiff's Response in Opposition (Dkt. 32), and Defendant's Reply (Dkt. 35). The Court has considered the filings, the record evidence, and the relevant law and concludes that the evidence fails to raise a genuine issue of material fact. For this reason, which will be discussed in more detail below, Defendant's summary judgment motion will be granted.

## FACTUAL BACKGROUND

Plaintiff Roula Baroudi claims that Defendant Eric Shinseki, Department of Veterans Affairs Secretary, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – 2000e17. Baroudi alleges that, through his agents at the C.W. Bill Young VA Medical Center in Pinellas County, Florida, Defendant (1) retaliated against her for having engaged in protected employment activity and (2) created a retaliatory hostile work environment.

Baroudi, a Syrian-born Muslim female and a U.S. citizen, is an infectious disease doctor for the Department of Veterans Affairs. (Dkt. 1, Complaint, ¶ 2; Dkt. 32, Ex. 1, Baroudi Dep., pp. 6, 106). She began her employment at the Pinellas County Medical Center in 1999; she became a specialist in the infectious disease section in 2001. (Dkt. 26, Ex. 1, Baroudi Dep., pp. 6-7).[1] Dr. David Johnson leads that section and has been Baroudi's supervisor since she moved there. (Id. at 6). Dr. Thomas Marinelli, the Medical Center's Chief of Medicine, is Dr. Johnson's immediate supervisor. (Dkt. 1, ¶ 12; Dkt. 26, p. 2). And Suzanne Linker is the Medical Center's Director. (Dkt. 26, Ex. 3, Klinker Dep., p. 6).

Baroudi alleges a litany of workplace indignities that began in October 2009, when her performance evaluation was downgraded from "outstanding," which it had been the previous two years, to "high satisfactory." (Dkt. 26, Ex. 7, p. 15, Baroudi Dep., Ex. 3; *see Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs*, No. 13-14477, 2015 WL 1475586, *1 (Apr. 2, 2015)). Baroudi initiated an Equal Employment Opportunity complaint about that evaluation, to which Defendant responded, Baroudi has alleged, with various acts of retaliation. *Baroudi*, 2015 WL 1475586 at *1-2.

These acts became the subject of Baroudi's first lawsuit against Defendant, which she filed in this district in 2011. That lawsuit also alleged employment discrimination in violation of Title VII. Specifically, Baroudi claimed in that lawsuit that she was the victim

---

[1] The parties' filings refer to the Medical Center as "Bay Pines." They are referring to the same VA facility. In 2014, Bay Pines was renamed in honor of late Congressman C.W. Bill Young.

of the following: (1) retaliation; (2) a retaliatory hostile work environment; and (3) discrimination based on her national origin, religion, and/or gender. On all of these claims, the district court granted summary judgment in favor of Defendant, and the Eleventh Circuit affirmed. *See Baroudi*, 2015 WL 1475586, at *6.[2]

Although now final, that lawsuit gave rise to facts relevant here. In preparation for that trial, Baroudi took photographs of patient records that were left in unsecured locations in the infectious disease section of the Medical Center and gave those photographs to her attorney. (Dkt. 26, Ex. 2, Baroudi Dep., p. 56). According to her deposition for this case, Baroudi did this for two reasons: (1) because Dr. Johnson had accused her of violating hospital policy for failing to safeguard patient information; and (2) to demonstrate that his accusation unfairly singled her out for an indiscretion committed by many in the section, including Dr. Johnson. (Id. at 57-61).

The Medical Center became aware of these photographs—which it viewed as a potential breach of its privacy policy—by way of an email to its privacy office on January 9, 2014. (Dkt. 26, Ex. 7, Baroudi Dep., Ex. 19). Soon thereafter, Baroudi admitted to taking the photographs and providing them to her attorney. (Klinker Dep., p. 15). The privacy office conducted an investigation, during which the office disabled Baroudi's computer access. (Dkt. 26, Ex. 5, Baczewski Dep., p. 14-16). That investigation concluded that Baroudi's conduct—taking and sharing photographs of patient information—violated three

---

[2] The Eleventh Circuit's opinion outlines the alleged incidents of discrimination—forty-nine in all, raised in four EEO complaints—underlying Baroudi's claims in that case.

Medical Center policies. (Klinker Dep., p. 16.) After consulting with Human Resources, Dr. Marinelli notified Baroudi of these violations on March 24, 2014. In that notification letter, Dr. Marinelli proposed that Baroudi serve a fourteen-day suspension as penalty. (Id.) The letter further advised Baroudi that she had two weeks to respond—written, orally, or both, and with the assistance of counsel if she chose—and that her response would be considered, along with other factors, by the deciding official, Director Klinker, in determining an appropriate penalty. (Id.)

Baroudi hired counsel, who responded to the letter on her behalf. (Dkt. 26, Ex. 7, Baroudi Dep., Ex. 21). In that response, Baroudi admitted to the underlying conduct but argued that discipline was inappropriate because her actions were part of a "litigation privilege" and the photographs were shared only with her attorneys. (Id.)

Director Klinker considered these arguments and ultimately reduced the fourteen-day proposed suspension to a seven-day suspension with pay. (Dkt. 26, Ex. 7, Baroudi Dep., Ex. 20). This "paper suspension," as the Medical Center calls it, was not really a suspension as the term is generally understood; Baroudi was not only paid during the suspension, she continued to work during it. (Id.; Klinker Dep. p. 33). The letter notifying Baroudi of this suspension did state, however, that a traditional suspension would be held in abeyance for a period of one year and that the paper suspension would remain in Baroudi's permanent employment record. (Baroudi Dep., Ex. 20).

**Baroudi's Hostile Work Environment Allegations**

Baroudi claims that the investigation into these photographs, the subsequent suspension, and at least eighty other instances of unwelcome harassment were done in

retaliation for her EEO protected participation in the previous lawsuit—and that, taken together, they created a retaliatory hostile work environment. (Dkt. 32, p. 16). These instances of discrimination were documented in two EEO complaints. The first, which Baroudi filed in May 2013, identified forty-three instances, among them allegations that:

- Baroudi was reported for not responding to an email.
- Baroudi was accused of being a "troublemaker."
- Baroudi was excluded from a meeting.
- Baroudi's performance evaluation did not improve from the previous year.
- Dr. Johnson once took over the care of one of Baroudi's patients without her knowledge.
- Dr. Johnson criticized Baroudi's clinical care.
- A meeting was scheduled on short notice while Baroudi was scheduled to give a lecture somewhere else.

(Baroudi Dep., Ex. 2).

Baroudi filed a second EEO complaint in May 2014 and later amended it to add more acts of discrimination. Forty in all, they included allegations that:

- Baroudi's request to change her office was denied.
- Baroudi's computer access was temporarily denied.
- Baroudi was not provided educational support for a conference at which she was scheduled to speak.
- Baroudi's performance evaluation was downgraded to "satisfactory."
- Physicians in other sections of the Medical Center had been involved in interviewing applicants for physician positions while Baroudi had not been given the same opportunity.
- Dr. Marinelli called a meeting in which he required Baroudi to meet with Dr. Johnson.
- Supervisors did not provide Baroudi the opportunity to discuss her publications.

(Baroudi Dep., Exs. 16). These acts and others, Baroudi alleges, created a retaliatory hostile work environment that violates Title VII.

**Baroudi's Retaliation Allegations**

Baroudi makes an additional claim under Title VII. She alleges that these incidents of discrimination, taken together, not only created a hostile work environment, but also amounted to unlawful retaliation. Additionally, Baroudi claims that four incidents, standing alone, qualify as retaliation: 1) the privacy office's investigation into her workplace photographs; 2) the privacy office's denial of her computer access during that investigation; 3) her suspension; and 4) her downgraded "satisfactory" performance evaluation.

## DISCUSSION

Defendant now moves for summary judgment, claiming that the facts, when viewed in the light most favorable to Baroudi, do not support her retaliation claim. As for the hostile work environment claim, Defendant argues that the incidents as alleged are not, as a matter of law, actionable under Title VII. Baroudi opposes and argues that she has presented enough facts to get her case before a jury.

**Summary Judgment Standard**

Motions for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue over any material fact and that the moving party is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; rather, the record must reveal a "*genuine* issue of *material* fact."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis in original). Facts are material if, under the applicable substantive law, they might affect the outcome of the case. *See id*. And disputes over those facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the non-moving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. Conclusory allegations will not suffice. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Neither will "a mere scintilla of evidence supporting" the non-movant's claims. *Walker v. Darby*, 911 F.2d 1573, 1577 (1th Cir. 1990) (internal quotations omitted). The non-movant must instead present facts that are significantly probative to support those claims. *Anderson*, 477 U.S. at 248-49 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968) (requiring that "sufficient evidence supporting the claimed factual dispute be shown to [defeat the motion and] require a jury or judge to resolve the parties' differing versions of the truth.")).

Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

**Baroudi's Retaliation Claim**

Title VII prohibits an employer from retaliating against an employee for that employee's opposition to a discriminatory employment practice or participation in an investigation about employment discrimination. 42 U.S.C. § 2000e-3(a). In cases lacking direct evidence of retaliation, a plaintiff may nonetheless establish a prima facie case of retaliation by showing that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal relationship between the two. *Baroudi v. Secretary, U.S. Dept. of Veterans Affairs*, No. 13-14477, 2015 WL 1475586, *3 (Apr. 2, 2015).[3] As of 2013, however, per Supreme Court precedent, the third "causal relationship" prong requires "but for" causation, heightened from the previous "motivating factor" standard. *Id.* (citing *Univ. Of Tex Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2526 (2013).

If a plaintiff can meet this standard, retaliation is presumed. *Bryant v. Jones*, 597 F.3d 1160, 1181 (11th Cir. 2010). The burden then shifts to the defendant, as the Eleventh Circuit has explained:

> [T]he burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action. If the defendant carries the burden of production, the presumption raised by the prima facie case is rebutted and drops from the case. After the defendant makes this showing, the plaintiff has a full and fair opportunity to demonstrate

---

[3] Recognizing that the Eleventh Circuit's 2015 *Baroudi* opinion is unpublished and is therefore not binding authority, because that case involved the same parties, the same legal claims, and similar factual allegations, the Court finds that opinion to be persuasive authority and cites to it as such. *See* U.S. Ct. of App. 11th Cir. Rule 36-2.

> that the defendant's proffered reason was merely a pretext to mask
> the discriminatory actions.

*Id.* (citing *Brown v. Alabama Dept. of Transp.*, 597 F.3d 1160 (11th Cir. 2010)). The burden, in other words, shifts again, back to the plaintiff, *Goldsmith v. Bagby Elevator Co. Inc.*, 513 f.3d 1261, 1277 (11th Cir. 2008), who "must meet that reason head on and rebut it." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (internal quotations omitted). Challenging the wisdom of employer's reason is not enough. *Id.* The plaintiff must instead demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. State of Alabama State Tenure Com'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotations omitted). If a plaintiff cannot meet this burden, summary judgment is appropriate. *See id*; *see also Howard v. BP Oil Co.*, 32 F.3d 520, 526 (11th Cir. 2005) ("[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable.") (internal citations omitted).

Here, the parties agree that this is not a case with direct evidence of retaliation. (*See* Dkt. 26, pp. 6-7; Dkt. 32, p. 5 (citing the circumstantial evidence standard)). The parties also agree that Baroudi engaged in protected employment activity. (*See* Dkt. 32, p. 5). The Court's focus therefore narrows to Defendant's employment actions and his reasons for having taken them. *See Bryant*, 597 F.3d at 1181.

Liberally construed in her favor, Baroudi's filings in this case identify five Medical Center employment actions that, she alleges, amount to retaliation. Those actions are (1) the Privacy Office's investigation into her workplace photographs; (2) the Privacy Office's denial of her computer access during that investigation; (3) her suspension; (4) her 2013 and 2014 performance evaluations; and (5) the cumulative effect of these four actions and the eighty-plus incidents that Baroudi reported in her two EEO complaints. The facts, however, viewed in the light most favorable to Baroudi, do not support her allegations. More specifically, each allegation either fails to establish a prima facie case of retaliation, or fails to rebut the Medical Center's legitimate, non-discriminatory reasons for its employment actions.

## 1. The Privacy Office's Investigation, Its Denial of Computer Access, and Baroudi's Suspension.

The Court will decline to decide whether any of the Medical Center's actions surrounding Baroudi's workplace photographs were materially adverse employment actions. The Court does not need to conduct such an analysis because, even if the actions were materially adverse, the Medical Center had legitimate reasons for having taken them, and Baroudi has failed to show pretext. *See Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008); *see also Penningtn v. City of Huntsville*, 261F.3d 1262, 1266 11th Cir. 2001) (doubting but assuming a prima facie case, and affirming summary judgment "because we find the [Defendant's] legitimate reasons for the decision are dispositive.")

An email the Privacy Office received in January 2014 alerted the Medical Center of a possible privacy breach caused by workplace photographs. This was a legitimate reason

for initiating an investigation. Regarding that email complaint, Director Klinker testified: "My concern was [the] unauthorized photography of sensitive patient information." (Klinker Dep., p. 14) Moreover, the Medical Center has a dedicated Privacy Office, and a Privacy Officer who runs the office, and a mechanism by which privacy complaints can be submitted anonymously by email, as was done here. (Id.) These facts alone suggest that the Medical Center has legitimate, non-discriminatory reasons to investigate allegations of privacy breaches.

Based on the contents of the email complaint, the Privacy Office began to suspect that Baroudi violated the Medical Center's privacy policy. This was a legitimate reason for disabling Baroudi's computer access. As Privacy Officer Deanna Baczewski testified, "anytime we feel that VA data is at risk, or we identify that it has been compromised, our office will disable user access." (Baczewski Dep., p. 16).

Finally, the Privacy Office's suspicions were confirmed when Baroudi admitted to taking workplace photographs of patient information. Director Klinker formally notified Baroudi of the investigation's findings—that Baroudi had violated three privacy policies— in a letter dated July 18, 2014. (Baroudi Dep., Ex. 20). These violations provided a legitimate, non-discriminatory reason for imposing a seven-day suspension. *See Holifield v. Reno*, 115 F.3d 1555, 1565-66 (11th Cir. 1997) (finding that violations of workplace policies and poor management legitimized reassignment and termination); *Muhammad v. Audio Visual Serv's. Group*, 30 Fed.Appx. 864, 873 (11th Cir. 2010) (finding that employee's "tone and demeanor during his . . . telephone conversation with [his boss],"

which the boss perceived as offensive, met the "exceedingly light" burden needed to establish a legitimate reason for his firing).

To these reasons for the Medical Center's employment actions, Baroudi offers a few arguments in rebuttal. None of them, however, establish pretext. Pretext must "cast sufficient doubt" on the employer's proffered reasons for an employment action to permit a reasonable factfinder to conclude that those proffered reasons "were not what actually motivated its conduct." *Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008).

Baroudi first disputes the Medical Center's characterization that the initial complaint to the Privacy Office was anonymous. Instead, Baroudi contends, the complaint was lodged by Patricia Ellis, a nurse practitioner who worked closely with Dr. Johnson. (Dkt. 32, p. 7). But Baroudi has cited few facts suggesting animus on the part of Ellis and no facts tending to prove that the Privacy Office's investigation, its decision to disable Baroudi's computer access, or Director Klinker's suspension were motivated by Ellis's or Dr. Johnson's animus. *See Holifield*, 115 F.3d at 1563-64 ("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case.") In fact, the undisputed facts demonstrate that once the Privacy Office was notified of the possible privacy breach, neither Ellis nor Johnson played any role in the investigation or suspension decision.

Baroudi also takes issue with the length of time that her computer access was denied. Here, again, she fails to demonstrate how this length amounts to pretext. Privacy Officer Baczewski testified that computer access is denied "anytime we feel that VA data is at risk," and that it is denied until "the investigation's [sic] concluded." (Baczewski Dep., p.

16). Once Director Klinker notified Baroudi of her seven-day suspension, Baroudi's computer access was reinstated. (Dkt. 32, Ex. 19, Marinelli Dep., p. 17-18).

As for that suspension, Baroudi has raised the "cat's paw" theory, which enables courts to find causation when a decision-maker merely acts as a conduit and "rubber stamps" the retaliatory animus of a recommender. *Crawford v. Carroll*, 529 F.3d 961, n. 21 (11th Cir. 2008). The theory does not apply here: Baroudi has presented no evidence that Marinelli, in proposing a fourteen-day suspension, did so in an effort to retaliate against Baroudi; and even if he had, Director Klinker far from rubber stamped the suspension when she reduced it to a seven-day paper suspension.

On these facts, Baroudi cannot cast sufficient doubt that the Medical Center's actions in response to her workplace photography were motivated by anything other than legitimate concerns over patient privacy. Baroudi cannot convince a reasonable juror that these actions violated Title VII.

### 2. Baroudi's Performance Evaluations

Baroudi has failed to establish a prima facie case that her performance evaluations were unlawful retaliation. In similar cases involving evaluations and promotions, the Eleventh Circuit has repeatedly stated, "[i]f a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1277 (11th Cir. 2008) (quoting *Holifield*, 115 F.3d at 1562). This means Baroudi can survive summary judgment in one of two ways: (1) by identifying a similarly situated employee, outside of her protected class, who was treated more favorably than she was; or (2) by presenting

other evidence from which an inference of discrimination can be found. *Rioux*, 520 F.3d at 1277.

Baroudi cannot point to comparators who were treated better than she was. In fact, Dr. Joshi, Baroudi's only colleague in the infectious disease section also rated by Dr. Johnson, testified that he received a lower evaluation than he had expected. (Dkt. 26, Ex. 4, Dr. Joshi Dep., p.25).[4] And Baroudi has not pointed to specific facts supporting an inference of discrimination. Baroudi has only offered conclusory claims that "her ratings have been on a steady decline in spite of her continued outstanding performance." (Dkt. 32, p. 16). Such claims do not survive summary judgment. *Compare Rioux*, 520 F.3d at 1277 (reversing summary judgment and detailing eight acts supporting inference of discrimination—like employer's maintenance of a "race tracking spreadsheet").

### 3.  The Cumulative Effect

Baroudi can still survive summary judgment if she can show that, although no single one of Defendant's employment actions amounted to retaliation, cumulatively they did. *Booth v. Pasco County, Fla.*, 829 F.Supp.2d 1180, 1191 (M.D. Fla. 2011). Indeed, Baroudi cites *Booth v. Pasco County, Florida*, a 2011 case in which this Court denied an employer's motion for summary judgment upon this kind of cumulative effect finding. *Id.* (citing *Shannon v. Bellsouth Telecomms, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)). The court there

---

[4] The experience of Dr. Joshi is consistent with the recent Medical Center trend, detailed in the Eleventh Circuit's opinion in Baroudi's last lawsuit, of more rigorously evaluating employees. *See Baroudi*, 2015 WL 1475586, at *4-5. There, for example, a number of employees, Dr. Johnson included, testified to receiving lower performance evaluations under more stringent guidance from management. *Id.*

first laid out the Eleventh Circuit's standard for "materially adverse," which is an employment action that might dissuade a reasonable worker from making or supporting a charge of discrimination. *Id.* (citing *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

The court then concluded that the employer's actions—involuntarily transferring the plaintiff, forcing him to submit to "fitness for duty" examinations, and giving him a bad performance review—could, collectively, convince a reasonable juror that the materiality standard had been met. *Id.* At 1193. Baroudi argues that *Booth* and her case are similar, and that summary judgment should likewise be denied. (See Dkt. 32, p. 16-17).

But Baroudi overlooks one significant distinction, indeed the dispositive one. The employer in *Booth* never argued that it had non-discriminatory reasons for its employment actions, so the court only needed to consider the materially adverse standard. *Id.* Here, of course, Defendant did offer non-discriminatory justifications for the Medical Center's most significant employment actions—specifically, the Privacy Office's investigation into Baroudi's workplace photographs, the Office's restriction of Baroudi's computer access, Baroudi's seven-day suspension, and Baroudi's performance evaluations. And the Court has found that those justifications were lawful and warrant summary judgment.

What remains for Baroudi, then, are incidents she identified that are distinct from these lawful employment actions. The Court finds that these incidents—any one of them or all of them, cumulatively—fail to meet the materiality standard. Instead, they are more akin to "those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68.

Baroudi's EEO complaints illustrate this point. In 2013, for example, Baroudi reported that "another staff member was 'acknowledged' as participating in work [that she] did herself;" that she "was either not notified about or excluded from a meeting;" and that she "was not acknowledged for her publications." (Baroudi Dep., Ex. 2).

In 2014, Baroudi reported that she "was not afforded the opportunity to talk about her publications;" that "an [Infectious Diseases]-related policy she helped create had again been revised;" and that "her medical poster was removed from the clinic while she was on leave." (Baroudi, Dep., Ex. 16).

The Court also notes that many of Baroudi's complaints are in fact conclusory allegations unsupported by evidence, which will be discussed below in connection with Baroudi's hostile work environment claim.

In any event, the Supreme Court has emphasized that "it is important to separate significant from trivial harms," material from immaterial ones. *Burlington*, 548 U.S. at 67-68. The incidents that remain on Baroudi's retaliation claim, the evidence clearly shows, are among the latter. Summary judgment as to them will be granted.

**Baroudi's Retaliatory Hostile Work Environment Claim**

To establish a retaliatory hostile work environment claim, a plaintiff must show each of the following: (1) that she engaged in statutorily protected employment activity; (2) that, after doing so, she was subjected to unwelcome harassment; (3) that her protected activity was the "but for" cause of the harassment; and (4) that the harassment was sufficiently severe or pervasive as to alter the terms and conditions of her employment. *Baroudi*, 2015 WL 1475586, at *5 (citing *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012)). The

last element has both an objective and subjective component. *Gowski*, 682 F.3d at 1311-12. This means that the plaintiff must "subjectively perceive" the harassment as severe enough to change the terms of her employment, and the harassment must result in an environment that a reasonable person would find hostile or abusive. *Id.* In evaluating the objective component, courts should consider all the circumstances surrounding the retaliatory conduct, to include its frequency and severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the employee's job performance. *Id.*

Throughout this inquiry, courts must remain mindful that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275 (1998) (internal quotations omitted). To that end, "conduct must be extreme to amount to a change in the terms and conditions of employment." Simple teasing, offhand comments, and isolated incidents do not suffice. *Id.* Neither should a supervisor's critique of an employee's job performance. *See McCoy v. Macon Water Authority*, 966 F.Supp. 1209, 1221 (M.D. Ga. 1997); *accord Rattigan v. Holder*, 604 F.Supp.2d 33, 49 (D.D.C. 2009). As the Eleventh Circuit has stated, "Title VII prohibits discrimination; it is not a shield against harsh treatment at the work place." *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986) (internal quotations omitted).

When viewed in the light most favorable to Baroudi, the facts here fail to meet the elements of a hostile work environment claim.

Most of the eighty-plus incidents Baroudi cites fail because they did not alter the terms of her employment. Notably, many of these incidents bear a strong resemblance to those that the Eleventh Circuit found insufficient as a matter of law in her last case. In that case, for example, "Johnson excluded her and did not respond to emails." *Baroudi*, 2015 WL 1475586, at *5. Here, Baroudi "learned that Dr. Johnson [had] made decisions and changes that affected her work and practice without her knowledge." (Baroudi Dep., Ex. 2). In that case, "[Johnson] made unfavorable office assignments." *Baroudi*, at *6. Here, a "nurse was given space in [Baroudi's] office." (Baroudi Dep., Ex. 2). In that case, "[Johnson] failed to inform [Baroudi] of meetings." *Baroudi*, at *6. Here, "[Baroudi] was not informed of a staff meeting." (Baroudi Dep., Ex. 16). The Eleventh Circuit characterized the incidents in that case as mere "office squabbles" that did not support a hostile work environment claim. *Baroudi*, at *6 (citing *Gowski*, 682 F.3d at 1311-12). The incidents Baroudi describes here are of the same character; the Court therefore reaches the same result.

Additionally, in that case Baroudi made general claims that Dr. Johnson spoke to her in "what she perceived to be a demeaning, threatening, and belittling manner." *Baroudi*, at *6. Baroudi makes similar claims here: that she was "subjected to threatening behavior" and spoken to in a "condescending" manner. (Baroudi Dep., Ex. 2). Just as the court concluded there, the Court finds that these conclusory statements could not convince a reasonable juror that Baroudi's work environment was objectively hostile. *See Baroudi*, at *6.

18

The incidents that Baroudi describes with more specificity—the Privacy Office investigation into a possible privacy breach, the disabling of Baroudi's computer access during that investigation, and Baroudi's suspension—also appear to be those over which Baroudi feels most aggrieved. *See* Dkt. 32, pp. 7 ("Perhaps the most egregious act of retaliation involves the VA's handling of an alleged privacy act violation.").

These acts fail to support Baroudi's claim because, even if they did sufficiently alter the conditions of her employment (which the Court does not assume and need not decide), Baroudi cannot establish causation. As previously discussed, the Privacy Office initiated an investigation after it received an email complaining of a possible privacy breach related to workplace photographs. (Dkt. 26, Ex. 5, Baszewski Aff., p. 14). Baroudi later admitted to taking the photographs and sharing them with her attorney. (Baroudi Dep., pp. 55-57; Baroudi Dep., Ex. 21).

Against this backdrop, Baroudi cannot show pretext. The Privacy Office, not Baroudi's supervisors, conducted the investigation into her workplace photographs. The Privacy Office, not Baroudi's supervisors, disabled Baroudi's computer. (Dkt. 26, Ex. 5, Baszewski Aff., p. 14). The Medical Center's Privacy Officer, Deanna Baczewski, who led that investigation, testified that it is standard procedure to disable user access to anyone under investigation for a privacy breach, in order "to mitigate any further risk." (Id. at 16). Baroudi's suspension was based on the investigation's findings and Baroudi's admissions. (Baroudi Dep., Ex. 20). Finally, Director Klinker's independent review of the investigation and decision to reduce Baroudi's penalty to a seven-day "paper suspension" disproves

Baroudi's "cat's paw" theory of causation. *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999).

No reasonable juror could find pretext under these facts. Without it, no juror could conclude that the Medical Center's handling of Baroudi's privacy breach alone created a hostile work environment. *See Gowski*, 682 F.3d at 1313-14 ("Discrete acts cannot alone form the basis of a hostile work environment claim . . . . [T]he jury could consider discrete acts as part of a hostile work environment claim.") (emphasis omitted). And finally, no reasonable juror could conclude that the Medical Center's handling of the privacy breach, when evaluated in conjunction with Baroudi's other allegations that fail to state a claim, somehow combine to create a hostile work environment. *See Nat'l R.R. Passenger Corp.*, 536 U.S. 101, 117, 122 S.Ct. 2061 (2002) (a claim "is composed of a series of separate acts that collectively constitute one unlawful employment practice") (internal quotations omitted).

Baroudi may have faced some personal animosity at work. But such are the "ordinary tribulations" of the workplace, which are not actionable under Title VII. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 778, 118 S.Ct. 2275 (1998); *see also McCollum*, 794 F.2d at 610. Summary Judgment is appropriate. *See Baroudi*, at *6.

## CONCLUSION

This case is a lot like Baroudi's last case against Defendant. In fact, the most striking difference is that, here, Defendant has made an even more compelling presentation of the legitimate, non-discriminatory reasons for the employment actions that Baroudi labels retaliation. As it was there, the list of discriminatory allegations is long. But a careful

review of the record reveals that none, standing alone, creates a triable claim of retaliation. *Howard v. BP Oil Co.*, 32 F.3d 520, 526 (11th Cir. 2005). And, taken together, the allegations fail to present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quoting *Silverman v. Bd. Of Educ.*, 637 F.3d 729, 733 (7th Cir. 2011)).

Likewise, Baroudi has failed to state a case that could convince a reasonable juror that her work environment was sufficiently abusive to support a hostile work environment claim. *See Baroudi*, 2015 WL 1475586, at 6.

It is therefore ORDERED AND ADJUDGED that:

1.    Defendant's Motion for Summary Judgment (Dkt. 26) is GRANTED.

2.    The Clerk is directed to enter judgment in favor of Defendant on all counts.

3.    All pending motions are denied as moot.

4.    The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida, this 20th day of October, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2014\14-cv-1099 SJ Grant.docx